# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN M. GREGG, | : | No. |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action – Law |
| | : | |
| UPMC PINNACLE t/d/b/a | : | |
| UPMC PINNACLE HARRISBURG, | : | (Electronically filed) |
| formerly PINNACLE HEALTH | : | |
| SYSTEM | : | |
| Defendant | : | |
| | : | Jury Trial Demanded |

## <u>COMPLAINT</u>

AND NOW, TO WIT, comes Plaintiff, Ann M. Gregg, by and through her counsel, Solomon Z. Krevsky, Esquire and Clark & Krevsky, LLC and files the following Complaint:

## **INTRODUCTION**

1.      Plaintiff, Ann M. Gregg, (hereinafter "Plaintiff") brings this action against her former employer, UPMC Pinnacle t/d/b/a UPMC Pinnacle Harrisburg, formerly Pinnacle Health System, (hereinafter "UPMC Pinnacle" or "Defendant") for claims arising under the Americans With Disabilities Act, *42 U.S.C. §12101 et seq.* as amended by the ADA Amendments Act of 2008 (hereinafter "ADA") and the Pennsylvania Human Relations Act, *43 P.S. §§951 et seq.* (hereinafter "PHRA"), all of which relate to Plaintiff's employment and the unlawful and retaliatory discharge of Plaintiff's employment effective February 4, 2015.

2.      This is an action brought to remedy violations of Plaintiff's rights under the ADA and PHRA, and to redress unlawful discriminatory and retaliatory conduct and employment practices. Defendant discriminated against Plaintiff based on her request for accommodations, failed to accommodate Plaintiff and retaliated against Plaintiff based on attempt to exercise her rights under the ADA and PHRA, resulting in the unwarranted discharge of Plaintiff's employment effective February 4, 2015.

## **PARTIES, JURISDICTION AND VENUE**

3.      Plaintiff is an adult female who, at all relevant times hereto, resided in the Commonwealth of Pennsylvania and was formerly employed by Defendant.

4.      At all relevant times hereto, Pinnacle Health System served as Plaintiff's statutory and *de facto* employer.

5.      At all relevant times hereto, Plaintiff performed job duties on behalf of Pinnacle Health System at Pinnacle Health System's Harrisburg Hospital located at 111 S. Front Street, Harrisburg, Dauphin County, Pennsylvania 17101.

6.      On or about September 1, 2017, Pinnacle Health System announced that it officially joined University of Pittsburgh Medical Center ("UPMC") to become UPMC Pinnacle (hereinafter the "Merger").

7.      As a result of the Merger between Pinnacle Health System and UPMC, Defendant UPMC Pinnacle was formed.

8.      As a result of the Merger between Pinnacle Health System and UPMC, Defendant UPMC Pinnacle assumed all rights and responsibilities of Pinnacle Health System.

9.      As a result of the Merger between Pinnacle Health System and UPMC, Defendant UPMC Pinnacle acquired all assets and liabilities of Pinnacle Health System.

10.     As a result of the Merger between Pinnacle Health System and UPMC, Defendant UPMC Pinnacle became the successor in interest to Pinnacle Health System and assumed all successor liability.

11.     Following the Merger between Pinnacle Health System and UPMC, Defendant UPMC Pinnacle continued to own Harrisburg Hospital and operates the entity under a fictitious name – UPMC Pinnacle Harrisburg

12.     Defendant UPMC Pinnacle is an employer as that term is defined under and pursuant to the ADA and PHRA.

13.     Defendant UPMC Pinnacle is a not-for profit health system located in central Pennsylvania, with a principal place of business located at 409 South 2nd Street, Harrisburg, Pennsylvania 17105.

14.     At all relevant times hereto, Defendant acted through its agents, servants, apparent agents, and/or managerial employees who, collectively, were authorized to act and did act within the scope of authority, course of employment, and/or under the direct control of Defendant.

15.     This Honorable Court has original jurisdiction pursuant to *28 U.S.C. §1331* as this case arises under the laws of the United States and pursuant to the ADA which provides for original jurisdiction.  Moreover, this Honorable Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to *28 U.S.C. §1367*.

16.     Jurisdiction over Plaintiff's claims is appropriate in that Plaintiff satisfied all preconditions to the filing of this action by way of pursuit of administrative remedies.

17.     On February 24, 2015, Plaintiff timely filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and cross-filed with the U. S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination.

18.     All preconditions to suit in this Honorable Court have been satisfied by virtue of Plaintiff having exhausted all administrative remedies.

19.     Plaintiff has sought and received Right-to-Sue notices from the PHRC and EEOC.

20.     Venue lies within the Middle District of Pennsylvania pursuant to *28 U.S.C. §1391(b)* as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

## UNDERLYING FACTS

21.     Plaintiff commenced employment with Defendant in October 2007, as a Registered Nurse.

22.     In her capacity as a Registered Nurse, Plaintiff cared for newborns and adults in the maternity ward at Defendant's Harrisburg Hospital.

23.     Plaintiff also served as a Maternity Care Follow-Up Specialist for Defendant's Maternity Ward.

24.     In this capacity, Plaintiff made telephone calls to patients who had been discharged from the maternity ward in order to follow-up on their progress, medical issues, etc.  The work performed by Plaintiff as a Maternity Care Follow-Up Specialist was sedentary in nature.

25.    In her capacity as Registered Nurse and Maternity Care Follow-up Specialist, Plaintiff's immediate supervisor was Patti Maurer ("Maurer"), Defendant's Nurse Manger Maternity/Newborn Nursery.

26.    In her capacity as Nurse Manger Maternity/Newborn Nursery, Maurer served as a managerial agent for Defendant.

27.    At all relevant times hereto, Plaintiff performed duties as Registered Nurse and Maternity Care Follow-up Specialist in a satisfactory manner and consistent with Defendant's legitimate expectations.

28.    At no time during her tenure of employment with Defendant did Plaintiff receive a negative performance evaluation.

## PLAINTIFF SUFFERS DISABLING INJURY

29.    On October 9, 2014, Plaintiff suffered a traumatic right tibial plateau fracture rendering her temporarily incapacitated from work.

30.    Plaintiff immediately applied for and was approved for a leave of absence under the Family Medical Leave Act ("FMLA").

31.    Plaintiff's FMLA leave expired on December 31, 2014.

32.    In her application for FMLA leave, Plaintiff indicated that the requested medical leave was for a time period commencing October 9, 2014 and continuing through April 4, 2015 (a true and correct copy is attached hereto as Exhibit A).

33.     In connection with Plaintiff's request for FMLA leave, Maurer completed a

"Response to Request for Leave of Absence" form on October 24, 2014, confirming

that Plaintiff requested leave commencing October 9, 2014 and continuing through

April 4, 2015, and approved Plaintiff's request for leave (a true and correct copy is

attached hereto as Exhibit B).

34.     Plaintiff's right tibial plateau fracture substantially limited major life activities

including but not limited to standing, walking, driving, kneeling, squatting and

repeated motions with her right foot.

35.     Plaintiff's right tibial plateau fracture and the symptoms associated with same

are impairments which are longstanding in nature with potentially permanent

sequelae that will continue into the foreseeable future.

36.     Accordingly, Plaintiff's right tibial plateau fracture constitutes a "disability" as

that term is defined under and pursuant to the PHRA and ADA.

37.     Notwithstanding Plaintiff's disability and/or disabilities, she was able to

perform the essential functions of her job with reasonable accommodations.

**PLAINTIFF REQUESTS REASONABLE ACCOMMODATIONS**

38.     Defendant's Leaves of Absence - Personal Leave Policy states that, "A full-

time or part-time employee (0.4-1.0 FTE) who has completed thirty (30) days of

employment may be eligible for a personal leave of absence.  Requests for personal

leave must be made in writing and require the approval of the department manager."
(a true and correct copy is attached hereto as Exhibit C).

39.     Plaintiff's traumatic plateau fracture continued to heal, however, Plaintiff was
not released to return to work at the expiration of her FMLA leave.

40.     Therefore, in December 2014, Plaintiff requested additional leave under
Defendant's Personal Leave Policy due to her disability.

41.     On December 23, 2014, Defendant, through Maurer, authored a letter to
Plaintiff advising her that her current position would no longer be protected after the
December 31, 2014 expiration of FMLA leave (a true and correct copy is attached
hereto as Exhibit D).

42.     In this letter, Maurer also advised Plaintiff that the most recent medical
certification indicated that Plaintiff needed to be out of work through February 2,
2015.  Maurer stated that she expected that Plaintiff would be able to return to work
without restrictions on February 3, 2015.

43.     Defendant approved Plaintiff's Personal Leave _only_ through February 2, 2015,
despite the fact that it earlier approved Plaintiff's medical leave of absence through
April 4, 2015.

44.     Plaintiff immediately contacted Maurer to advise that the February 3, 2015
return-to-work date was incorrect, and that her physicians did not release Plaintiff to
return to work without restrictions in February.

45.     Plaintiff clarified that she had requested leave through early April, 2015 as indicated on her initial request for FMLA leave, and that Defendant approved the leave through April 4, 2015 (*see* Exhibit B).

46.     However, Maurer refused to extend Plaintiff's leave beyond the February 2, 2015 date.

47.     Plaintiff's request for leave through April 4, 2015 constituted a request for reasonable accommodation under the ADA and PHRA, and Plaintiff's request for disability accommodation in the form of extended leave was submitted in accordance with Defendant's Reasonable Accommodation Policy.

48.     Defendant's Reasonable Accommodation Policy – Temporary Disabilities states in pertinent part, "Employees who are temporarily disabled should work with their supervisors to determine if temporary accommodations are feasible based on department needs… All requests for light duty work must be accompanied by a Work Capacities Form signed by the treating healthcare provider and be submitted to both the supervisor and the Human Resources Department." (a true and correct copy is attached hereto as Exhibit E).

49.     On January 27, 2015, a Certification of Health Care Provider completed by Wesley Flint, M.D. noted that Plaintiff "would be able to perform desk work."  (a true and correct copy is attached hereto as Exhibit F).

50.    On that same date, at Defendant's request, Henry A. Boateng, M.D., completed a Work Capacities Form identifying areas in which Plaintiff was "not limited".  The areas in which Dr. Boateng indicated Plaintiff was "not limited" are consistent with Dr. Flint's assessment that Plaintiff "would be able to perform desk work."

51.    As a result of the opinions by Drs. Flint and Boateng, Plaintiff requested disability accommodations under Defendant's Reasonable Accommodation Policy – Temporary Disabilities in the form of a return to work to the sedentary position of Maternity Care Follow-up Specialist which she had been previously performing.

52.    Plaintiff made clear to Defendant that it was her intention to return to work to perform the sedentary position as Maternity Care Follow-up Specialist until such time as she was medically cleared to return-to-work as Registered Nurse.

## DEFENDANT DENIES PLAINTIFF'S REQUESTS FOR REASONABLE ACCOMMODATIONS AND TERMINATES HER EMPLOYMENT

53.    During the months of November and December 2014, and January 2015, Plaintiff remained in regular contact with Monica Mosey, the Registered Nurse who was responsible to coordinate the scheduling of Maternity Care Follow-up Specialist calls.

54.    During this time, Plaintiff advised Mosey, "I love doing calls.  Miss everyone." and "I was ok'd for phone calls.  Just not the floor yet."

55.    Mosey indicated that work as a Maternity Care Follow-Up Specialist was available and recommended that Plaintiff contact Maurer in order to approve Plaintiff's return to work in this position.

56.    Plaintiff called Maurer multiple times in order to request this disability accommodation, specifically, approval to return to work to perform as a Maternity Care Follow-Up Specialist until such time as Plaintiff was medically cleared to return-to-work as Registered Nurse.  Maurer did not return Plaintiff's calls.

57.    When Plaintiff was finally able to reach Maurer, Maurer advised Plaintiff that Plaintiff could not return to work "until she was released without any restrictions".

58.    Plaintiff was fully qualified, fully capable, and medically able to perform the job as Maternity Care Follow-Up Specialist.

59.    Defendant possessed no good-faith, legitimate reason to deny Plaintiff's accommodation request to work as a Maternity Care Follow-Up Specialist until such time as Plaintiff was medically cleared to return-to-work as Registered Nurse.

60.    Defendant possessed no good-faith, legitimate reason to deny Plaintiff's accommodation request to extend medical leave through early-to-mid April, 2015.

61.    Yet, on February 4, 2015, Defendant, through Maurer, authored a letter to Plaintiff advising her that Plaintiff's work restrictions "through April 15, 2015 … are too severe that we cannot meet."  Maurer also advised Plaintiff that "Since you are out of job protection, I find it necessary to terminate your employment with the

Pinnacle Health System effective February 4, 2015." (a true and correct copy is attached hereto as Exhibit G).

62.     Defendant possessed no good faith, legitimate basis to discharge Plaintiff's employment.

63.     Defendant's purported basis to terminate Plaintiff's employment was a pretext for unlawful discrimination and disparate treatment based upon Plaintiff's disability, record of disability, and/or the perception that Plaintiff is an individual with a disability, and/or in retaliation for Plaintiff's requests for accommodations.

64.     The events and circumstances described above constitute unlawful disability discrimination and retaliation.

65.     The termination of Plaintiff's employment constitutes adverse employment action.

## COUNT I
## AMERICANS WITH DISABILITY ACT OF 1990, AS AMENDED
### Failure to Accommodate Disability
### *ANN M. GREGG v. UPMC PINNACLE*

66.     Plaintiff repeats and repleads Paragraphs 1 through 65 of this Complaint, as more fully set forth at length and incorporates herein by reference.

67.     Defendant knew that Plaintiff suffered with a disability as a result of her right tibial plateau fracture and that she requested reasonable accommodations on account of same.

68.     On account of her disability, Plaintiff requested two separate reasonable

accommodations in order to perform the essential functions of her job:

>    a.   Initially, Plaintiff requested an accommodation in the form of an
>
>    extended leave of absence through early to mid-April, 2015.
>
>    b.   When Plaintiff was advised that Defendant would not accommodate her
>
>    request for an extension until April, 2015, Plaintiff requested an
>
>    accommodation to return to the sedentary position of Maternity Care
>
>    Follow-Up Specialist until such time as Plaintiff was medically cleared
>
>    to return-to-work as Registered Nurse.

69.     Defendant knew that Plaintiff's disability would require, from time to time,

reasonable accommodations.

70.     Defendant knew that Plaintiff requested reasonable accommodations as a

result of her disability.

71.     The reasonable accommodations requested by Plaintiff, if granted, would have

permitted Plaintiff to perform the essential functions of her job.

72.     The reasonable accommodations requested by Plaintiff did not and would not

have imposed upon Defendant an undue burden.

73.     Nevertheless, Defendant failed or otherwise refused to implement or continue

the reasonable accommodations requested by Plaintiff.

74.   Defendant failed to engage in the interactive process to determine what accommodations could be made in order to return Plaintiff to work with the restrictions outlined by her physician.

75.   It is anticipated that Defendant will claim that an additional leave of absence was an undue hardship.  However, it never provided to Plaintiff any explanation as to why her accommodation requests purportedly imposed upon Defendant an undue burden, nor did Defendant produce evidence of same.

76.   If, in fact, an extended leave of absence was an undue hardship (which it was not), Defendant could have returned Plaintiff to work to the sedentary position of Maternity Care Follow-Up Specialist as a reasonable accommodation.

77.   Defendant possessed no legitimate business justification for its refusal to grant Plaintiff's disability-based accommodations.

78.   Defendant possessed no legitimate business justification for its termination of Plaintiff's employment.

79.   Defendant refused to grant and/or implement Plaintiff's requests for reasonable accommodations in the form of a medical leave of absence and/or return to work to a sedentary position.

80.   Defendant violated the ADA by refusing to grant and/or implement Plaintiff's requests for reasonable accommodations.

81.     Moreover, Defendant violated the ADA by failing to participate in the interactive process designed to cooperatively identify reasonable accommodations required by law that would permit Plaintiff to perform the essential functions of her job.

82.     By failing to grant or implement reasonable accommodations and failing to participate in the interactive process designed to identify reasonable accommodations that would permit Plaintiff to perform the essential functions of her job, Defendant violated the ADA on the basis of Plaintiff's disability.

83.     Upon information and belief, Plaintiff's position was replaced by an individual who was not disabled and who did not request reasonable accommodations.

84.     The intentional failure to accommodate, as more fully described above, resulted in tangible job detriments and/or adverse employment action including but not limited to lost wages and the unlawful discharge of Plaintiff's employment.

85.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff is entitled to back pay and benefits together with interest thereon, and claim is made therefor.

86.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff is entitled to reinstatement or front pay and benefits should reinstatement prove impractical, and claim is made therefor.

87.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff has suffered and will continue to suffer, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

88.     Because the intentional failure to accommodate directed to Plaintiff, as more fully described above, was undertaken by Defendant in derogation of Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages and claim is made therefor.

89.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff is entitled to recover her costs and attorney fees and claim is made therefor.

## COUNT II
## AMERICANS WITH DISABILITY ACT OF 1990, AS AMENDED
### Discriminatory Discharge
### Disability/Perceived Disability/Record of Disability
### *ANN M. GREGG v. UPMC PINNACLE*

90.     Plaintiff repeats and repleads Paragraphs 1 through 89 of this Complaint, as more fully set forth at length and incorporates herein by reference.

91.     Plaintiff is a member of a class of individuals protected against discrimination in the workplace on account of a disability, a record of disability, and/or the perception that Plaintiff is an individual with a disability.

92.     Plaintiff has been subjected to continuing discrimination and disparate treatment on the basis of her disability, her record of disability, or Defendant's perception of her as an individual with a disability, in a manner affecting the terms and conditions of her employment and resulting in Defendant's termination of Plaintiff's employment.

93.     Defendant knew that Plaintiff suffered with a disability as a result of her right tibial plateau fracture and that she requested reasonable accommodations on account of same.

94.     By way of illustration, Plaintiff requested a reasonable accommodation on the basis of her disability in the form of a medical leave of absence in December 2014 that would extend to early or mid-April, 2015.

95.     In addition, Plaintiff requested an accommodation to return to the sedentary position of Maternity Care Follow-Up Specialist until such time as Plaintiff was medically cleared to return-to-work as Registered Nurse.

96.     Defendant granted Plaintiff's request for a medical leave of absence but *only* until February 2, 2015.

97.     Moreover, Defendant refused to return Plaintiff to the sedentary position of Maternity Care Follow-up Specialist.

98.     Because Defendant knew or suspected that the seriousness of Plaintiff's disability might require future or extended medical leaves of absence, Defendant

terminated Plaintiff's employment rather than implement accommodations that would have enabled Plaintiff to perform the essential functions of her job.

99.    Had Defendant granted Plaintiff's requests for reasonable accommodations, Plaintiff would have been able to perform essential job functions.

100.    Defendant discriminated against Plaintiff on account of her disability, her record of disability, or Defendant's perception of Plaintiff as an individual with a disability, including but not limited to the following:

a.    Failing to participate in the interactive process designed to cooperatively identify a reasonable accommodation required by law.

b.    Refusing to extend Plaintiff's leave of absence beyond February 2, 2015.

c.    Refusing to allow Plaintiff to return to work to the sedentary position of Maternity Care Follow-Up Specialist.

d.    Refusing to grant or implement reasonable accommodations.

e.    Failing to adhere to policies concerning equal employment opportunities.

f.    Terminating Plaintiff's employment without cause effective February 4, 2015.

101.    Defendant possessed no legitimate business justification for its refusal to grant reasonable accommodations that would have permitted Plaintiff to perform essential job functions.

102.    Defendant possessed no legitimate business justification for its termination of Plaintiff's employment.

103.    Any purported basis for terminating Plaintiff's employment is a pretext for unlawful discrimination on the basis of Plaintiff's disability, her record of disability, or Defendant's perception of Plaintiff as an individual with a disability.

104.    Moreover, upon information and belief non-disabled employees similarly situated to Plaintiff who have requested accommodations similar to those requested by Plaintiff were not terminated from employment with Defendant.

105.    Defendant subjected Plaintiff to discrimination and disparate treatment on the basis of Plaintiff's disability, her record of disability, and/or Defendant's perception of Plaintiff as an individual with a disability.

106.    Upon information and belief, Plaintiff's position was replaced by an individual outside of Plaintiff's protected class.

107.    Defendant's unlawful discrimination and disparate treatment, as more fully described above, resulted in adverse employment action.

108.    The intentional disability discrimination and disparate treatment, as more fully described above, resulted in tangible job detriments and/or adverse employment action including but not limited to lost wages and the unlawful discharge of Plaintiff's employment.

109.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff is entitled to recover back pay and benefits together with interest thereon, and claim is made therefor.

110.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff is entitled to reinstatement or front pay and benefits should reinstatement prove impractical, and claim is made therefor.

111.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff has suffered and will continue to suffer, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

112.   Because the intentional discrimination and disparate treatment directed to Plaintiff, as more fully described above, was undertaken by Defendant in derogation of Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages and claim is made therefor.

113.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff is entitled to recover her costs and attorney fees and claim is made therefor.

**COUNT III**
**AMERICANS WITH DISABILITY ACT OF 1990, AS AMENDED**
**Retaliatory Discharge**
**Disability/Perceived Disability/Record of Disability**
*ANN M. GREGG v. UPMC PINNACLE*

114.   Plaintiff repeats and repleads Paragraphs 1 through 113 of this Complaint, as more fully set forth at length and incorporates herein by reference.

115.   Plaintiff's requests for reasonable accommodations and use of reasonable accommodation in the form of a medical leave of absence, as more fully described above, are legally protected activities under and pursuant to the ADA and PHRA.

116.   Defendant retaliated against Plaintiff as a result of her legally protected activities, including but not limited to the following:

    a.   Failing to participate in the interactive process designed to cooperatively identify a reasonable accommodation required by law.

    b.   Refusing to extend Plaintiff's leave beyond February 2, 2015.

    c.   Refusing to allow Plaintiff to return to work with restrictions to the sedentary position of Maternity Care Follow-Up Specialist.

    d.   Refusing to grant or implement reasonable accommodations.

    e.   Failing to adhere to policies concerning equal employment opportunities.

    f.   Terminating Plaintiff's employment effective February 4, 2015.

117.   Defendant's unlawful retaliation, as more fully described above, resulted in adverse employment action.

118.    Defendant willfully violated the ADA when it retaliated against Plaintiff because of her because of her protected activities, as more fully described above.

119.    The intentional retaliation, as more fully described above, resulted in tangible job detriments and/or adverse employment action including but not limited to lost wages and the unlawful discharge of Plaintiff's employment.

120.    As a direct and proximate result of Defendant's intentional retaliation, Plaintiff is entitled to back pay and benefits together with interest thereon, and claim is made therefor.

121.    As a direct and proximate result of Defendant's intentional retaliation, Plaintiff is entitled to reinstatement or front pay and benefits should reinstatement prove impractical, and claim is made therefor.

122.    As a direct and proximate result of Defendant's intentional retaliation, Plaintiff has suffered and will continue to suffer, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

123.    Because the intentional retaliation directed to Plaintiff, as more fully described above, was undertaken by Defendant in derogation of Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages and claim is made therefor.

124.    As a direct and proximate result of Defendant's intentional retaliation, Plaintiff is entitled to recover her costs and attorney fees and claim is made therefor.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT
### Discrimination and Disparate Treatment
### *ANN M. GREGG v. UPMC PINNACLE*

125.   Plaintiff repeats and repleads Paragraphs 1 through 124 of this Complaint as

more fully set forth at length and incorporates herein by reference.

126.   The acts and/or omissions identified above and incorporated herein by

reference violate the Pennsylvania Human Relations Act, 43 P.S. §951 et seq.

127.   As a direct and proximate result thereof, Plaintiff has sustained damages as

more fully described above and incorporated herein by reference, and claim is made

therefor.


WHEREFORE, Plaintiff Gregg respectfully requests this Honorable Court to enter

judgment in her favor and against Defendant UPMC Pinnacle for:

1.      Back pay and benefits;

2.      Front pay and benefits should reinstatement prove unfeasible;

3.      Statutory prejudgment interest;

4.      Compensatory damages including, but limited to, recovery for emotional

        distress under ADA and the PHRA;

5.      Reasonable attorney fees and costs;

6.      An Order prohibiting Defendant, its officers, successors and assigns, and all

        persons in active concert or participation with it from engaging in unlawful

disability discrimination, disparate treatment, discharge, and any other

employment practice which discriminates on account of a disability, a record

of disability, and/or the perception that Plaintiff is an individual with a

disability

7.     An Order requiring Defendant to institute and carry out policies, practices and

programs which provide equal employment opportunities for workers and

which eradicate the effects of past and present unlawful employment practices;

8.     An Order requiring Defendant to institute and carry out a complaint procedure

which encourages employees to come forward with complaints regarding

violations of its policies against unlawful employment practices;

9.     An Order requiring Defendant to institute and carry out a training program

which shall promote supervisor accountability, imposing on all managers and

supervisory personnel a duty to actively monitor the work area to ensure

compliance with policies on non-discrimination; and requiring all managers

and supervisors to report any incidents and/or complaints of discrimination

and/or retaliation of which they become aware to the department charged with

handling such complaints; and

10.    Any other relief that this Court deems just and equitable.

Respectfully submitted,

CLARK & KREVSKY, LLC

Date: <u>February 12, 2018</u>       By:   <u>*/s/ Solomon Z. Krevsky*</u>
Solomon Z. Krevsky, Esquire
Attorney for Plaintiff
Supreme Ct. I.D. #72719
20 Erford Road, Suite 300A
Lemoyne, PA 17043
(717) 731-8600; (717) 731-4764 fax
e-mail:  szk@clark-krevskylaw.com